UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
**BRANDON EMERICK**,

                Plaintiff,

             **- against -**

**ANDREW M. SAUL**, Commissioner of Social Security,

                Defendant.
------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

19-CV-2826

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff appeals the Commissioner of Social Security's decision that he is not disabled for purposes of receiving Social Security Income ("SSI") payments under Title XVI of the Social Security Act. For the reasons set forth below, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion, and remand the case for further proceedings.

## BACKGROUND

      On July 31, 2015, the plaintiff filed an application for SSI with an onset date of June 1, 2002, alleging disability due to patellofemoral femur dysfunction, arthritis and post-traumatic stress disorder ("PTSD"). (Tr. 15, 52.)

      The 49-year-old plaintiff says he began experiencing knee pain at the age of eleven, and underwent arthroscopic surgery in both knees as a teenager. (Tr. 214.)[1] He says he has constant dull pain in both knees that at times becomes "hot, burning, sore, sharp." (Tr. 40, 214.) His knee pain keeps him from working or using public transportation, and limits his ability to stand, sit or walk for more than ten or twenty minutes at a time. (Tr. 37, 41-42, 160.) The plaintiff also says

---

[1] The plaintiff has a graduate degree in English and media studies. (Tr. 37-38.)

1

he has a history of anxiety and depression, and that he developed PTSD after he "almost drown[ed]" in his apartment during Hurricane Sandy. (Tr. 259.) Because of these conditions, the plaintiff has not worked since 2001.

The plaintiff's SSI request was denied on November 19, 2015. (Tr. 61-64.) Administrative Law Judge ("ALJ") James Kearns held a hearing on April 8, 2017, at which the *pro se* plaintiff testified. (Tr. 28.) The plaintiff brought a friend who also spoke about the plaintiff's condition. (Tr. 40-41, 43-47.) Finally, a vocational expert testified about jobs available for someone with the plaintiff's limitations. (Tr. 48-52.)[2] The plaintiff told the ALJ that he "noticed that there were a lot of records missing," and the ALJ confirmed that he was "going to make sure" he got "any medical records that [he] need[s] . . ." (Tr. 31.) After the hearing, the ALJ issued a subpoena to the plaintiff's treating orthopedist, Dr. Ronald Chase, requesting "all records from January 2017 to the present" and "a medical source statement." (Tr. 101-112.)

ALJ Kearns denied the plaintiff's claim in a September 11, 2017 decision. (Tr. 15-24.) The ALJ found that while the plaintiff had severe impairments, including degenerative joint disease of the knees and PTSD, he was not eligible for SSI. (Tr. 17.) ALJ Kearns described the plaintiff's treatment history as "weak," and concluded that the consulting physicians' assessments were not supported by objective evidence in the record. (Tr. 23-24.) ALJ Kearns also determined that the plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain limitations, including standing and shifting position for up to five minutes each hour, avoiding extreme temperatures, doing only simple tasks, and having only occasional interactions with coworkers and the public. (Tr. 19.)

---

[2] The plaintiff also posed a series of questions to the vocational expert about the nature of the available jobs and what they entailed. (Tr. 48-50.)

2

On March 6, 2019, the Appeals Council denied the plaintiff's request for review. (Tr. 1-5.) The plaintiff, represented by counsel, filed this action on May 8, 2019, and both parties moved for judgment on the pleadings. (ECF Nos. 1, 13, 18.)

**STANDARD OF REVIEW**

A district court reviewing a final decision of the Commissioner "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (quotation marks omitted).

The court must defer to the Commissioner's factual findings when they are "supported by substantial evidence," but not "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (citations omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Moreover, the district court should remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). "Where there are gaps in the administrative record or the ALJ has applied an improper standard, or when the ALJ's rationale is unclear in light of the record

3

evidence, remand to the Commissioner for further development of the evidence or for an explanation of reasoning is warranted." *Gonzales v. Comm'r of Soc. Sec.*, No. 17-CV-1976, 2017 WL 7310391, at *8 (S.D.N.Y Aug. 24, 2018) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).

## DISCUSSION

The plaintiff argues that the ALJ should have gotten records from the plaintiff's treating physician, Dr. Ronald Chase, and objects to the weight the ALJ assigned to the consultative physicians' opinions.  He also says that the ALJ did not properly evaluate his statements about his physical condition.  Finally, the plaintiff challenges the ALJ's appointment.  I agree that the record must be supplemented to include Dr. Chase's evaluation, which may have an impact on the ALJ's view of the plaintiff's credibility.  I reject the plaintiff's claim about the ALJ's appointment.

### I. Duty to Develop the Record

Orthopedic surgeon Dr. Ronald Chase began treating the plaintiff in July of 2015 for bilateral knee pain and stiffness.  (Tr. 155, 244.)  Although Dr. Chase appears to be one of the few doctors who had a consistent treatment relationship with the plaintiff, the record includes only imaging results and one treatment note dated January 4, 2016.  (Tr. 221-22.)  Imaging showed "mild bilateral medial and patellofemoral compartment degenerative joint disease with marginal bony productive change[,]" and "moderate bilateral lateral compartment degenerative joint disease with marginal bony productive change."  (Tr. 224*.*)  After the plaintiff's first visit, Dr. Chase diagnosed him with degenerative joint disease and spur formation in both knees.  Dr. Chase continued to treat the plaintiff in 2015 and 2016, and prescribed Meloxicam and Celebrex to treat his knee pain.  (Tr. 189.)  Describing the plaintiff's prognosis as "guarded," Dr. Chase

4

commented that he was treating the plaintiff for bilateral patellofemoral arthrosis and bilateral maltracking patella, "chronic conditions which severely limit[] the patient's ability to walk and do similar activities;" the plaintiff's condition was "expected to worsen with time," and he might "need surgery for total knee replacement." (Tr. 222.)[3] In 2017, Dr. Chase took X-rays of the plaintiff's knees and, according to the plaintiff, told him that he would need full knee replacements within two years. (Tr. 188-89, 223.) The record does not include Dr. Chase's opinion about the effect of the plaintiff's knee problems or his ability to sit or stand.

"[T]he ALJ, unlike a judge in a trial, must affirmatively develop the record in light of the essentially nonadversarial nature of a benefits proceeding." *Brown v. Astrue*, No. 07-CV-3416, 2009 WL 301942, at *3 (E.D.N.Y. Feb. 6, 2009) (quoting *Batista v. Chater*, 972 F. Supp. 211, 217 (S.D.N.Y. 1997) (quotations omitted). The ALJ "is under a heightened duty to develop the record where . . . the claimant proceeds *pro se*." *Id.* (citations omitted). "In such *pro se* proceedings, the ALJ's affirmative duty requires not only requesting reports from treating physicians, but mak[ing] every reasonable effort to obtain . . . a report that sets forth the opinion of that treating physician as to the existence, the nature and the severity of the claimed disability." *Villarreal v. Colvin*, No. 13-CV-6253, 2015 WL 6759503, at *21 (S.D.N.Y. Nov. 5, 2015) (citations omitted). "Reasonable effort" includes not only seeking medical records from treating physicians, but also issuing and enforcing subpoenas and "advising the plaintiff of the importance of the evidence." *Jones v. Apfel*, 66 F. Supp. 2d 518, 524 (S.D.N.Y. 1999); *see also* 42 U.S.C. § 405(d); *see also Connor v. Barnhart,* No. 02-CV-2156, 2003 WL 21976404, at *5 (S.D.N.Y. Aug. 18, 2003) ("[R]aw data or even complete medical records are insufficient by

---

[3] "Guarded prognosis refers to a prognosis given by a physician [expressing that] the outcome of a patient's illness is in doubt." *Coleman v. Comm'r of Soc. Sec.*, No. 15-CV-6624, 2017 WL 1155785, at *4 n.5 (E.D.N.Y. Mar. 27, 2017) (quoting Taber's Cyclopedic Medical Dictionary, 914 (21st ed. 2009)).

5

themselves to fulfill the ALJ's duty.") (quotations and citation omitted). "Until he satisfies this threshold requirement, the ALJ cannot even begin to discharge his duties to the *pro se* claimant under the treating physician rule." *Peed v. Sullivan,* 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991).

The Commissioner does not dispute that Dr. Chase's records are important, but maintains that the ALJ fulfilled his duty to develop the record by issuing a subpoena to Dr. Chase for the plaintiff's medical records and an assessment of the plaintiff's physical condition. (ECF No. 20 at 1-2.) While the subpoena was important, it was also necessary to follow up, either by taking steps to enforce the subpoena or by letting the plaintiff know that the record was still incomplete. Nor did the ALJ "advise the claimant that 'he considered his case unpersuasive, and . . . suggest that he produce additional medical evidence or call [his treating physician] as a witness.'" *Carroll v. Sec. of Dept. of Health & Human Servs. of U.S.,* 872 F. Supp. 1200, 1204 (E.D.N.Y. 1995) (quoting *Santiago v. Schweiker*, 548 F. Supp. 481, 486 (S.D.N.Y. 1982)) (remanding where ALJ issued subpoena to treating physician, but did not enforce the subpoena or tell the plaintiff to attempt and obtain the records or call the physician as a witness); *Suriel v. Comm'r of Soc. Sec.*, No. 05-CV-1218, 2006 WL 2516429, at *6 (E.D.N.Y. Aug. 29, 2006) (finding reasonable efforts to "entail[] more than merely twice requesting medical reports from treating physicians").

Of course, the ALJ may very well decide after he reviews the additional records that Dr. Chase's opinion does not merit controlling weight under the treating physician rule.[4] That decision is for the Commissioner.[5] Should the ALJ determine on remand not to give Dr. Chase's

---

[4] The treating physician rule applies because the plaintiff filed his claim before March 27, 2017. *See* 20 C.F.R. § 404.1527.

[5] ALJ Kearns assigned little weight to Dr. Chase's opinion because there was no objective evidence to support Dr. Chase's finding, and because of a discrepancy between Dr. Chase's findings and the conclusions of the consultative examiner. Without all of Dr. Chase's records, however, there is no way to determine whether there is a discrepancy, and if there is, which opinion deserves greater weight.

opinion controlling weight, he should explain why. *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given . . . and we will continue remanding when we encounter opinions from ALJ[s] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

The plaintiff also challenges the ALJ's decision to assign partial weight to the medical opinions of the two physicians who examined the plaintiff—the consultative examiner, Dr. Shannon Gearheart, and the consultative psychologist, Dr. Johanina McCormick. (ECF No. 19 at 12-14.) While neither physician treated the plaintiff, both evaluated him before the hearing. The plaintiff argues that in assessing his residual functional capacity, the ALJ did not account for Dr. Gearheart's opinion that the plaintiff had "marked limitations for squatting, kneeling, climbing, repetitive stair climbing, prolonged walking, and standing" and "moderate limitations for heavy lifting, carrying, and prolonged sitting." (Tr. 218.)[6] He also argues that Dr. McCormick's opinion merited more than partial weight because she opined that the plaintiff's mild to marked cognitive impairment "could interfere with [his] ability to function on daily basis." (Tr. 211.)

The ALJ gave both opinions the appropriate weight. Neither physician treated the plaintiff, and their opinions were not entitled to controlling weight. The ALJ cited the evidence

---

[6] According to the plaintiff, Dr. Gearheart's findings about the plaintiff's moderate limitations "for heavy lifting, carrying, and prolonged sitting" are inconsistent with the ALJ's conclusion that the plaintiff can perform sedentary work. (ECF No. 19 at 12.) However, courts in this circuit have held that a claimant can perform sedentary work even with a moderate limitation. *See Carroll v. Colvin*, No. 13-CV-456S, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014) ("[C]ourts have upheld an ALJ's decision that the claimant could perform light or sedentary work even where there is evidence that the claimant has moderate difficulties in prolonged sitting or standing.") (citations omitted); *see also Cottrell v. Comm'r of Soc. Sec.*, 17-CV-6893, 2019 WL 201508, at *4-5 (upholding ALJ's finding that claimant could walk or stand for 6 hours during an 8 hour workday even though the ALJ did not discuss claimant's moderate limitation for walking and standing).

that supported his conclusions about the weight he assigned to each opinion, and accounted for each doctor's observations about the plaintiff's limitations in his RFC determination.[7] "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("On an appeal such as this, we are faced with a simple reality which appellants often overlook, namely, that factual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence"). The ALJ cited evidence in the record that supported his decision to assign limited weight to both opinions, and those findings were not contrary to the objective evidence in the record.

## II. Credibility Determination

"Evidence of pain is an important element in the adjudication of DIB and SSI claims, and must be thoroughly considered in calculating the RFC of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (unpublished). If the "claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id.* When determining credibility, the ALJ considers the following factors:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of claimant's pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes to relieve symptoms; (5) treatment, other than medication, received by claimant for relief of pain; (6) any other measures claimant takes to relieve pain or other symptoms; and (7) other factors concerning claimant's functional limitations and restrictions due to pain.

20 C.F.R. § 404.1529(c)(3)(i)-(vii).

---

[7] For example, ALJ Kearns accounted for Dr. Gearheart's opinions about the plaintiff's limitations by specifying that when performing sedentary work, the "claimant must have the option to stand and shift positions for up to five minutes per hour." (Tr. 19.)

8

The plaintiff testified that his pain and other symptoms kept him from sitting or standing, and that he could only walk two blocks at a time and had trouble going up and down stairs. (Tr. 36-44.)[8] Apart from daily at-home physical therapy exercises, the plaintiff "[did not] do much" aside from basic errands around the house. (Tr. 43.) He did not believe that he could work in a job that required him to sit for eight hours because the pain in his knees would keep him from concentrating. (Tr. 50.) The plaintiff also said that PTSD kept him from sleeping well and that concentration would "definitely [be] an issue that [he] would have with pretty [much] any position." (Tr. 50.) The plaintiff argues that the ALJ gave insufficient consideration to his subjective complaints about his pain, his limited range of motion, his restricted daily activities and his cognitive difficulties. (ECF No. 19 at 15-19.)

The ALJ concluded that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that the "[plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 20.) The ALJ noted the plaintiff's subjective claims of pain, but did not discuss or refer to the other relevant credibility factors, such as the plaintiff's account of his day-to-day activities. Nor did ALJ Kearns specify the extent to which he credited the plaintiff's testimony. *See Kane v. Astrue,* 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013) (finding the ALJ committed legal error by not referring to any of the credibility factors listed in 20 C.F.R. § 404.1529(c)(3)); *Grosse v. Comm'r of Soc. Sec.,* No. 08-CV-4137, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding the ALJ committed legal error when he failed to consider factors 2 through 7 of the credibility factors).

---

[8] The plaintiff also claimed that he could not use public transportation and had to rely on a friend to drive him to appointments because he "can't sit for . . . long periods of time," (Tr. 36), but his friend seemed to attribute this in part to the lack of suitable public transportation in his neighborhood. (Tr. 37.)

On remand, "after the ALJ reassesses the opinion[] of the . . . treating physician[] and obtains additional information as needed to resolve any inconsistencies or ambiguities, the ALJ must likewise reassess the credibility of [the claimant's] subjective complaints." *Demera v. Astrue*, No. 12-CV-432, 2013 WL 391006, at *4 (E.D.N.Y. Jan. 24, 2013). If the ALJ still finds that the plaintiff's statements are inconsistent with the medical evidence, including Dr. Chase's detailed opinion, he should explain why he reached that conclusion and include a specific credibility determination.

### III. Challenge to ALJ's Appointment

Citing *Lucia v. Securities Exchange Commission*, in which the Supreme Court held that ALJ officers employed by the Securities and Exchange Commission must be properly appointed, 138 S. Ct. 2044, 2053 (2018), the plaintiff argues that the appointment of the ALJ was unconstitutional. (ECF No. 19 at 19-24.) The plaintiff acknowledges that he did not raise this issue before the ALJ or Appeals Council, and is raising it for the first time in this appeal. (*Id.*)[9]

I agree with the majority of courts that "have concluded that exhaustion before the ALJ is required." *Bonilla-Bukhari v. Berryhill*, 357 F. Supp. 3d 341, 351 (S.D.N.Y. 2019) (collecting cases); *see, e.g.*, *Nestor v. Comm'r of Soc. Sec.,* No. 19-CV-580, 2019 WL 4888649, at *3 (E.D.N.Y. Oct. 3, 2019) (plaintiff waived his challenge when he failed to bring his Appointments Clause challenge at the administrative level); *McMorris v. Comm'r of Soc. Sec.*, No. 6:18-CV-6118, 2019 WL 2897123, at *11 (W.D.N.Y. June 26, 2019) ("If plaintiff wanted to contest the ALJ's appointment, the matter should have first been brought up in administrative proceeding, not in federal court."); *Kevin F. v. Comm'r of Soc. Sec.*, No. 5:18-CV-1454, 2019 WL 247323, at *7 (N.D.N.Y. Jan. 16, 2019) ("[B]y failing to raise this issue in the agency, this court agrees that

---

[9] He adds that the Court "need not consider his appointments clause challenge should it find remand necessary for other reasons." (ECF No. 21 at 3.)

10

plaintiff in this case has waived consideration of the constitutionality of the ALJ's appointment."). Consistent with the majority view, I find that the plaintiff waived this claim because he did not raise it below.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted. The Commissioner's motion for judgment on the pleadings is denied. The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                   s/Ann M. Donnelly
                                             _____

                                             Ann M. Donnelly
                                             United States District Judge

Dated: Brooklyn, New York
       August 5, 2020